**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CLIFFORD ENG, M.D.,**

**Plaintiff,**

**v.** **Case No: 6:24-cv-1289-PGB-LHP**

**DOUGLAS A. COLLINS,**

**Defendant.**
_____________________________/

**ORDER**

This cause comes before the Court upon the following filings:

1. Defendant Douglas A. Collins[1] in his capacity as Secretary of the Department of Veterans Affairs' ("**Defendant**") Motion for Summary Judgment (Doc. 31 ("**Defendant's Motion**"));

2. Plaintiff Clifford Eng, M.D.'s ("**Plaintiff**") Cross-Motion for Partial Summary Judgment and Response in Opposition to Defendant's Motion (Doc. 39 ("**Plaintiff's Cross-Motion**" or "**Plaintiff's Response**"));[2]

---

[1] Although Plaintiff named Denis McDonough as Defendant in his capacity as the Secretary of the Department of Veterans Affairs, this position is now held by Douglas A. Collins. (*See* Doc. 19 (the "**Amended Complaint**")). Pursuant to Federal Rule of Civil Procedure 25(d), upon assuming office, Douglas A. Collins was automatically substituted as the party Defendant in this action.

[2] Collectively, Defendant's Motion (Doc. 31) and Plaintiff's Cross-Motion (Doc. 39) will be referred to as the "Motions."

3. Defendant's Response to Plaintiff's Cross-Motion and Reply in Support of Defendant's Motion (Doc. 40);

4. Plaintiff's Reply in Support of Plaintiff's Cross-Motion (Doc. 45); and

5. The parties' Stipulation of Agreed Material Facts (Doc. 29).

Upon consideration, Defendant's Motion is due to be found as moot in part and denied in part and Plaintiff's Cross-Motion is due to be granted.

## I. BACKGROUND

Through this action, Plaintiff seeks review of the Disciplinary Appeals Board's ("**DAB**") decision finding it lacked jurisdiction over Plaintiff's appeal related to Plaintiff's purported discharge from employment and revocation of clinical privileges by the Department of Veterans Affairs ("**VA**").[3] (Doc. 19, ¶¶ 25–29).

Plaintiff is a former staff pathologist for the Orlando VA Medical Center (the "**Orlando VA**"). (Doc. 29, ¶¶ 1–2). Plaintiff thus maintained clinical privileges with the Orlando VA relevant to that role, including privileges in anatomic pathology, diagnostic pathology, and laboratory medicine. (*See id.* ¶¶ 6–7). However, on March 23, 2022, Plaintiff was notified that his anatomic pathology privileges were being suspended. (*Id.* ¶ 6). Two days later, Plaintiff was notified that his diagnostic pathology and laboratory privileges were likewise being suspended. (*Id.* ¶ 7). It is uncontested that these suspensions occurred after

[3] The DAB is "a statutorily established administrative appeals body specific to Title 38 employees of the [VA] that hears appeals of major adverse actions against such employees." (Doc. 29, ¶ 18).

Plaintiff committed a medical error, though Plaintiff contends this was simply a process error rather than the result of a lack of professional competence. (*E.g.*, Doc. 31-12, p. 75). Defendant then conducted a retrospective review of the cases handled by Plaintiff from 2020 to 2022.[4] (Doc. 29, ¶ 8).

Ultimately, on March 24, 2023, Timothy Cooke ("**Cooke**"), the Medical Center Director for the Orlando VA, issued a memorandum (Doc. 31-12, pp. 7–11 (the "**Decision Memo**")) to Plaintiff. (Doc. 29, ¶¶ 4, 14). Therein, Cooke notified Plaintiff of his decision to discharge Plaintiff from employment and revoke his privileges with the Orlando VA. (*Id.* ¶ 14; Doc. 31-12, p. 7). The Decision Memo further informed Plaintiff of his "right to appeal both of these decisions to the [DAB] and to request a formal hearing before the [DAB]." (Doc. 31-12, p. 9). Of importance, it also contained the following paragraph ("**Paragraph 7**"):

> 7. Impact of Voluntary Surrender Of Privileges: Should you surrender or voluntarily accept a restriction of your clinical privileges, or resign or retire from your position with the Department of Veterans Affairs ***prior to the effective date of your discharge***, your fair hearing and appeal rights regarding privileges will be limited to a hearing on whether you took such action while under investigation for professional incompetence, professional misconduct or substandard care.

(*Id.* at p. 10 (emphasis added)). Finally, the Decision Memo notified Plaintiff that the effective date of his discharge would be March 29, 2023. (*Id.* at p. 7; Doc. 29 ¶ 15). On March 29, 2023—the same day as Plaintiff's date of discharge—Plaintiff

4 The administrative record reveals that Defendant believed it had discovered additional medical errors made by Plaintiff during this review, while Plaintiff contested the majority of Defendant's findings. (*E.g.*, Doc. 31-12, pp. 74–88).

submitted his retirement paperwork with the Orlando VA. (Doc. 29, ¶ 16). According to Plaintiff, he "chose to retire so as not to lose his retirement benefits," but he "set the retirement date so that it would coincide with the effective date of the discharge decision because he did not wish to forfeit his appeal rights." (Doc. 39, p. 12).

On April 4, 2023, Plaintiff requested to appeal to the DAB the VA's decisions to discharge him from employment and revoke his privileges. (Doc. 29, ¶ 17). On April 27, 2023, the DAB issued a Show Cause Order to Plaintiff (Doc. 31-12, p. 47 (the "**Show Cause Order**")) stating, in relevant part, as follows:

> [P]rior to the [contested] removal being effected, you elected to voluntarily retire prior to your removal being processed. As such, it appears that the [DAB] does not have jurisdiction of [sic] your appeal. In order to show a retirement is involuntary, you must raise a non-frivolous allegation that the retirement resulted from misinformation, deception, or coercion by the agency. Therefore, you are being given an opportunity to file evidence and argument showing the [DAB] has jurisdiction of [sic] your appeal.

(*Id.*).

Plaintiff submitted a response to the Show Cause Order. (Doc. 31-12, pp. 33–35 (the "**Show Cause Response**")). Therein, in relevant part, Plaintiff pointed to the language in Paragraph 7 of the Decision Memo, which only cautioned Plaintiff that his "fair hearing and appeal rights" would be limited if he retired from the VA "*prior to*" the effective date of his discharge. (*Id.* at p. 33 (citation omitted)). Plaintiff highlighted that he did not retire prior to the effective date of his discharge, but rather, he retired on the same day. (*Id.* at p. 34). Plaintiff thus

argued that his retirement was involuntary, as "the statement provided in [Paragraph 7] was misinformation [Plaintiff] relied upon that caused his . . . involuntary relinquishment of his fair hearing and appeal rights." (*Id.*).

Defendant replied in opposition to Plaintiff's Show Cause Response and argued Plaintiff had voluntarily retired, depriving the DAB of jurisdiction over the appeal. (*Id.* at pp. 64–67). The DAB agreed with Defendant, thus concluding that it lacked jurisdiction to hear the appeal because no "major adverse action" had been taken against Plaintiff.[5] (Doc. 31-13 (the "**Board Action**"); *see also* Doc. 29, ¶ 19).

As a result of the foregoing, on January 13, 2025, Plaintiff filed the operative Amended Complaint, wherein Plaintiff states two causes of action against Defendant—one for ethnicity and national origin discrimination under Title VII (Count I) (the "**Title VII claim**")), and one for judicial review of the DAB decision pursuant to 38 U.S.C. § 7462(f) (Count II) (the "**DAB review claim**")). (Doc. 19, ¶¶ 18–29).

In Defendant's Motion, Defendant seeks summary judgment as to both of Plaintiff's claims. (*See generally* Doc. 31). However, in Plaintiff's Response, Plaintiff indicates that he "will no longer pursue" his Title VII claim.[6] (Doc. 39, p.

[5] As discussed *infra*, the relevant statute requires a "major adverse action" to have occurred for the DAB to have jurisdiction over such an appeal. 38 U.S.C. § 7462(a)(1)(B). *See* discussion *infra* Section II.B.

[6] Because Plaintiff has abandoned his Title VII claim, the Court dismisses Count I without prejudice. (Doc. 39, p. 2). Therefore, the portion of Defendant's Motion that seeks summary judgment as to Count I is due to be found as moot. (Doc. 31, pp. 9–20).

2). Thus, through Plaintiff's Cross-Motion, Plaintiff seeks summary judgment in his favor only as to the DAB review claim. (*See generally* Doc. 39). Specifically, Plaintiff asks the Court to reverse the DAB's finding that it lacks jurisdiction over his appeal and to remand to the DAB for further proceedings. (*See id.* at pp. 14–15). The parties have each filed responses and replies to the respective Motions, and as such, the Motions are now ripe for the Court's review. (Docs. 39, 40, 45).

## II. STANDARD OF REVIEW

### A. Summary Judgment

A court may only "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" to support its position that it is entitled to summary judgment. FED. R. CIV. P. 56(c)(1)(A). Alternatively, the movant may meet its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). "The burden then shifts to the non-moving party, who must go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine dispute of material fact exists, the Court must read the evidence and draw all factual inferences therefrom in the light most favorable to the non-moving party and must resolve any reasonable doubts in the non-movant's favor.[7] *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007).

"The court need consider only the cited materials" when resolving a motion for summary judgment. FED. R. CIV. P. 56(c)(3); *see also HRCC, LTD v. Hard Rock Café Int'l (USA), Inc.*, 703 F. App'x 814, 816–17 (11th Cir. 2017) (per curiam) (holding that a district court does not err by limiting its review to the evidence cited by the parties in their summary judgment briefs and the arguments raised therein).[8]

**B. 38 U.S.C § 7462**

Under 38 U.S.C. § 7462(a)(1)(A)–(B), the DAB has "exclusive jurisdiction" to review any case that (1) concerns "a question of professional conduct or competence of a section 7401(1) employee"[9] (2) "in which a major adverse action

7 In the context of cross motions for summary judgment, "[t]he Court must consider each motion separately, resolving all reasonable inferences against the party whose motion is under consideration." *Boatwright v. Aetna Life Ins. Co.*, 599 F. Supp. 3d 1218, 1222 (M.D. Fla. 2022).

8 "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

9 In Defendant's Motion, Defendant does not dispute that Plaintiff qualifies as a section 7401(1) employee or that the DAB appeal concerns a question of his professional conduct or competence. *See* § 7642(a)(1)(A); (*see generally* Doc. 31). Accordingly, the only question

was taken." A "major adverse action" is expressly defined to include discharge from employment. 38 U.S.C. § 7461(c)(2)(E). Of note, in administrative actions, an involuntary retirement is "treated as if it were a removal." *Cooper v. Dep't of the Navy*, 108 F.3d 324, 326 (Fed. Cir. 1997) (citations omitted).

Once the DAB issues a final order or decision, under § 7462(f)(1), any § 7401(1) employee who is "adversely affected" thereby "may obtain judicial review" of such order or decision. § 7462(f)(1). A court's review of a DAB final order or decision is governed by § 7462(f)(2), which provides as follows:

> **(2)** In any case in which judicial review is sought under this subsection, the court shall review the record and hold unlawful and set aside any agency action, finding, or conclusion found to be--
> **(A)** arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> **(B)** obtained without procedures required by law, rule, or regulation having been followed; or
> **(C)** unsupported by substantial evidence.

§ 7462(f)(2). "The Court's review under this section 'directly mirrors the standards for judicial review of other administrative actions.'" *Beck v. Shinseki*, No. CV 113–126, 2015 WL 1202196, at *11 (S.D. Ga. Mar. 16, 2015) (quoting *Lerner v. Shinseki*, No. 3:12-CV-00565, 2013 WL 5592906, at *5 (W.D. Ky. Oct. 10, 2013)). "Analogous administrative law precedents, therefore, are applicable." *Id.* (citing *Abaqueta v. United States*, 255 F. Supp. 2d 1020, 1024 (D. Ariz. 2003)).

---

before the Court concerns whether any "major adverse action" was taken against Plaintiff. *See* § 7642(a)(1)(B).

## III. DISCUSSION

In Defendant's Motion, Defendant argues the DAB properly found that it lacked jurisdiction as Plaintiff did not suffer a "major adverse action" under § 7462(a)(1)(B).[10] (Doc. 31, p. 21). Defendant thus argues it is entitled to summary judgment in its favor as to Plaintiff's DAB review claim. (*Id.* at p. 24).

Plaintiff, by contrast, argues the DAB's finding that it lacked jurisdiction was "arbitrary and capricious, obtained without procedures required by [the U.S. Office of Personnel Management's ("**OPM**")] rules having been followed, and unsupported by substantial evidence." (Doc. 39, p. 14). In relevant part, Plaintiff contends that Paragraph 7 of the Decision Memo contained a material misrepresentation, since it stated Plaintiff's fair hearing and appeal rights would only be limited if he retired *prior to* the effective date of his discharge. (*Id.* at p. 10 (citing Doc. 31-12, p. 10)). Indeed, Plaintiff states that there is no indication that the DAB even considered Plaintiff's arguments that he lacked notice that his retirement would affect his fair hearing and appeal rights or that he was misled by Paragraph 7. (*Id.* at pp. 12–13). Plaintiff thus contends that the Court should grant

---

[10] Defendant also briefly asserts that Plaintiff did not argue his retirement was involuntary before the Show Cause Order issued, and that, even after the Show Cause Order issued, Plaintiff failed to produce evidence to support his position. (Doc. 31, p. 24). These arguments are unavailing. Because the Court ultimately finds Plaintiff was misled into believing he had preserved his right to appeal, it is no great surprise that Plaintiff failed to brief the DAB's jurisdictional concerns until it issued the Order to Show Cause. Moreover, Plaintiff's arguments in his Show Cause Response were, at bottom, *legal* arguments regarding the language included in the Decision Memo, which was issued by Defendant itself. (*See generally* Doc. 31-12, pp. 33–35). Consequently, the Court does not find that either of Defendant's aforementioned arguments provides a basis for affirming the DAB's jurisdictional determination.

summary judgment in his favor as to the DAB review claim.[11] (*See generally* Doc. 39). For the reasons discussed below, the Court agrees with Plaintiff.

### A. Plaintiff's Purported Reliance upon Extra-Record Evidence

As a threshold matter, the Court must address Defendant's argument that Plaintiff improperly asks the Court to consider evidence that was not before the DAB in ruling on the instant Motions. (Doc. 40, pp. 2–4). Defendant notes that it had attached Plaintiff's Application for Immediate Retirement (Doc. 31-9 (the "**Application**")) and his Certified Summary of Federal Service (Doc. 31-11 (the "**Certified Summary**")) to Defendant's Motion in support of its arguments regarding Plaintiff's now abandoned Title VII claim. (Doc. 40, p. 2). Yet, Plaintiff cites these exhibits in support of its arguments regarding the DAB review claim. (*Id.* at pp. 2–3). Thus, Defendant contends the Court should not consider the Application and Certified Summary when ruling on the DAB review claim.[12] (*Id.* at

[11] In support of Plaintiff's Motion, Plaintiff additionally argues that neither Defendant nor the DAB cite to any authority to support that an employee's decision to retire on his effective date of discharge limits the employee's fair hearing and appeal rights and "Plaintiff is not aware of any." (Doc. 39, p. 11). The Court disagrees, as both Defendant and the DAB have repeatedly pointed to the jurisdictional statute's requirement of a "major adverse action" in support of this argument. (*See generally* Docs. 31, 31-13). In any event, because the Court finds that Paragraph 7 was misleading and that the DAB was arbitrary and capricious in reaching its conclusion to the contrary, Plaintiff nevertheless prevails on his request for summary judgment.

[12] The Court notes that Defendant raises a related argument seeking to prevent Plaintiff from relying upon an OPM provision in support of Plaintiff's Motion despite Plaintiff's failure to cite that provision to the DAB below. (Doc. 40, pp. 2–4). Notably, Plaintiff appears to cite to the OPM provision in support of its argument that the DAB reached its jurisdictional determination "without procedures required by law, rule, or regulation having been followed" pursuant to § 7462(f)(2)(B). (*See, e.g.*, Doc. 39, pp. 8–11). However, the Court does not reach Plaintiff's argument regarding the OPM provision under § 7462(f)(2)(B), as it concludes the DAB's determination was arbitrary and capricious under § 7462(f)(2)(A). Consequently, the

p. 3). Of note, Plaintiff fails to respond to Defendant's arguments as to the Application and Certified Summary. (*See* Doc. 45, p. 6).

"[T]he district judge sits as an appellate tribunal in appeals under § 7462 and confines its review to the administrative record." *Salmon v. McDonough*, No. 3:22-cv-01207-MPS, 2024 WL 404542, at *4 (D. Conn. Feb. 2, 2024) (internal citations and quotation marks omitted); *see also Pres. Endangered Areas of Cobb's Hist., Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 (11th Cir. 1996) ("The focal point for judicial review of an administrative agency's action should be the administrative record." (citation omitted)). Further, "[w]hile certain circumstances may justify going beyond the administrative record, a court conducting a judicial review is not 'generally empowered' to do so." *Id.* at 1246 (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

Here, the Court agrees with Defendant that Plaintiff may not rely upon the Application and Certified Summary in support of his DAB review claim. (Doc. 40, pp. 2–4). Neither document was before the DAB when it rendered the decision under review and Plaintiff identifies no basis for departing from the general rule that judicial review is confined to the administrative record. (*See* Doc. 45, p. 6). That said, the practical import of this finding is, in the Court's view, rather limited, as the parties have expressly stipulated that the effective date of Plaintiff's

---

Court need not address Defendant's contention that the Court should exclude the OPM provision from its consideration when ruling on the parties' Motions. (*See* Doc. 40, pp. 2–4).

discharge was March 29, 2023, and that Plaintiff submitted his retirement paperwork the same day.[13] (Doc. 29, ¶¶ 15–16).

### B. Judicial Review under 38 U.S.C. § 7462(f)(2)

The Court's analysis begins—and in this case, ends—with its consideration of whether it must overturn the DAB's jurisdictional finding as it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" § 7462(f)(2)(A). "The arbitrary and capricious standard is 'exceedingly deferential.'" *Defs. of Wildlife v. U.S. Dep't of the Navy,* 733 F.3d 1106, 1115 (11th Cir. 2013) (quoting *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541 (11th Cir. 1996)). This standard is met where the agency has:

> relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

---

[13] Similarly, the Court notes that, in a single passage of the Board Action, the DAB referenced that Plaintiff's Show Cause Response "provided no evidence . . . to support when [Plaintiff's] retirement paperwork was submitted." (Doc. 31-13, p. 5). However, the Show Cause Order had expressly represented to Plaintiff that the DAB was already in possession of this information. (Doc. 31-12, p. 47 ("[The Decision Letter] sustained the [contested] removal with an effective date of March 29, 2023. *However, on March 29, 2023, prior to the removal being effected, you elected to voluntarily retire[.]*" (emphasis added))). And indeed, the DAB apparently had no difficulty determining the date of Plaintiff's retirement, given that the Board Action expressly rested on the DAB's finding that Plaintiff had retired before his removal was effected. (*E.g.*, *id.* ("Regardless [of the information provided in Plaintiff's Show Cause Response], the Decision to Discharge was made March 24, 2023, but [Plaintiff] retired prior to the major adverse action being taken.")). As a result, the Court does not place significant weight on this isolated reference, which is difficult to reconcile with the DAB's express finding elsewhere in the Board Action that Plaintiff had retired before his removal was effected. (*E.g.*, *id.*).

*Beck*, 2015 WL 1202196, at *11 (quoting *Defs. of Wildlife*, 733 F.3d at 1115). Thus, "[t]he scope of review . . . is narrow and does not permit a court to substitute its judgment for the agency." *Wolfe v. Sec'y, Dep't of Veterans Affs.*, No. 8:18-cv-841-T-23TGW, 2020 WL 7408602, at *4 (M.D. Fla. July 10, 2020) (citing *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)), *report and recommendation adopted*, 2020 WL 7408272 (M.D. Fla. Nov. 9, 2020). Instead, the standard "requires the agency to examine the relevant data and articulate a satisfactory explanation for its action with a rational connection between the facts found and the choice made." *Id.* (citing *Motor Vehicle Mfrs.*, 463 U.S. at 43).

Acknowledging the deferential standard that the Court applies in its analysis, the Court nevertheless finds that the DAB's jurisdictional determination was arbitrary and capricious. *See* § 7462(f)(2)(A). Specifically, for the reasons explained below, the Court finds that the DAB failed to adequately support its determination that Plaintiff's retirement was voluntary, and that there was thus no "major adverse action" as required by § 7462(a)(1)(B).

"A decision to resign from government service is presumed to be voluntary." *Harris v. United States*, 102 Fed. Cl. 390, 412 (Fed. Cl. 2011) (collecting sources). However, this presumption can be rebutted by the government employee. *E.g.*, *id.*; *Bergman v. United States*, 28 Fed. Cl. 580, 585 (Fed. Cl. 1993) (citations omitted). "To determine whether a resignation or retirement is voluntary, a court must examine 'the surrounding circumstances to test the ability of the employee to

exercise free choice.'" *Scharf v. Dep't of the Air Force*, 710 F.2d 1572, 1574 (Fed. Cir. 1983) (quoting *Perlman v. United States*, 490 F.2d 928, 933 (Ct. Cl. 1974)).

"With freedom of choice as the guiding principle," courts have held that a retirement is involuntary where it has been "obtained by agency misrepresentation[.]" *Id.* (citations omitted). An objective test applies when determining if a retirement was obtained by such misrepresentation, and thus, "a court in applying this test will not inquire into the 'subjective perceptions of the employee' or 'the subjective intentions of the agency.'" *Covington v. Dep't of Health & Hum. Servs.*, 750 F.2d 937, 942 (1984) (quoting *Scharf*, 710 F.2d at 1575); *see also Bergman*, 28 Fed. Cl. at 587–88 ("[A]pplication of an objective test is apposite for claims of government misrepresentation."). Thus, "there is no requirement that an employee be intentionally deceived about his employment options, it being sufficient that 'the employee shows that a reasonable person would have been misled by the agency's statements.'" *Covington*, 750 F.2d at 942 (quoting *Scharf*, 710 F.2d at 1575).

To begin, applying an objective standard to the given context, the Court agrees with Plaintiff that Paragraph 7 of the Decision Memo was misleading. *See id.* The misleading nature of Paragraph 7 is even more apparent when it is considered in conjunction with Paragraph 5, which almost immediately precedes it. (Doc. 31-12, pp. 9–10); *Scharf*, 710 F.2d at 1574 (noting that courts must "examine the surrounding circumstances" in ruling upon whether a retirement was voluntary). Paragraph 5 informed Plaintiff that, "[s]ince the reason for the action

as stated in the [Decision Memo] involves a question of professional conduct or competence, you have the right to appeal both of these decisions to the [DAB] and to request a formal hearing before the [DAB]." (Doc. 31-12, p. 9). Paragraph 5 then provided detailed information regarding such an appeal, at one point specifically citing to § 7462. (*Id.*). Next, Paragraph 6 notified Plaintiff that, upon "[a] finding that the discharge and revocation of clinical privileges are based on substandard care, professional misconduct, or professional incompetence, the medical center is required to file a report with the National Practitioner Data Bank[.]" (*Id.* at p. 10). Finally, as discussed above, Paragraph 7 then cautioned Plaintiff as follows:

> Should you surrender or voluntarily accept a restriction of your clinical privileges, or resign or retire from your position with the [VA] prior to the effective date of your discharge, your fair hearing and appeal rights regarding privileges will be limited to a hearing on whether you took such action while under investigation for professional incompetence, professional misconduct or substandard care.

(*Id.*).

The Court finds that, when read in the context of Paragraph 5 above, a reasonable person would believe that Paragraph 7 pertains to Plaintiff's previously referenced appeal and hearing rights before the DAB, and that such rights would only be limited if Plaintiff "resign[ed] or retire[d] *prior to the effective date* of [his] discharge." (*See id.* at pp. 9–10 (emphasis added)); *see Scharf*, 710 F.2d at 1574. The Court further concludes that a reasonable person would interpret the words "prior to" as having their ordinary meaning and would be interchangeable with the term "*before*." *See Prior To*, MERRIAM-WEBSTER DICTIONARY,

https://www.merriam-webster.com/dictionary/prior%20to (last visited July 15, 2026) (defining "prior to" as meaning "in advance of" or "BEFORE"). Thus understood, Paragraph 7 appeared to warn that Plaintiff's fair hearing and appeal rights would be limited only if Plaintiff retired *before* his effective date of discharge, March 29, 2023.[14] *See id.* Consequently, to the extent that this statement was untrue—because Plaintiff's decision to retire *on* March 29, 2023, affected his appeal rights under the "major adverse action" requirement imposed by § 7642(a)(1)—Paragraph 7 was materially misleading. *See id.* Further, Plaintiff relied upon this misleading provision to his detriment by deciding to retire on the effective date of his discharge under the misguided belief that this would preserve his appeal rights. (Doc. 39, p. 12).

More fundamentally, even assuming there exists a satisfactory explanation for why Paragraph 7 was not materially misleading, the Board Action fails to connect the DAB's reasoning to that conclusion. (*See generally* Doc. 31-13). Therein, although the DAB addressed various arguments raised by Plaintiff's Show Cause Response, it failed to grapple with the gravamen of Plaintiff's position, and instead flatly concluded that Paragraph 7 contains "standard language from OCHCO Templates and is accurate[.]" (*Id.* at p. 5). The DAB did not further identify the source of Paragraph 7's language or explain what that language was meant to convey. (*See id.*). Nor did the DAB explain why the fact that Paragraph 7 was

[14] It is noteworthy that Paragraph 7 could have cautioned Plaintiff that his fair hearing and appeal rights would be limited if Plaintiff retired "on or before" his effective date of discharge, but Paragraph 7 failed to convey such inclusive language.

"standard language from OCHCO Templates" necessarily meant that the language was not misleading in the given context. (*See id.*). Instead, the DAB simply applied § 7462 in performing its jurisdictional analysis and found that no "major adverse action" occurred, depriving the DAB of jurisdiction over Plaintiff's appeal. (*See generally* Doc. 31-13).

Finally, in support of its finding that Plaintiff's retirement was voluntary, the DAB noted that "[l]egal precedent has long held that just because an employee is faced with an inherently unpleasant situation . . . does not make his situation any less voluntary." (*Id.* at pp. 5–6). While this is a correct statement of the law, it is important to note that:

> [T]he law also requires that a choice between two alternatives, however unpleasant, *must be understood by the employee* and that *such a decision be freely made*. . . . A decision made "with blinders on," based on misinformation or a lack of information, cannot be binding as a matter of fundamental fairness and due process.

*Harris*, 102 Fed. Cl. at 414–15 (emphasis added) (quoting *Covington*, 750 F.2d at 942–43). Here, because Paragraph 7 misled Plaintiff as to the consequences of his retirement on the effective date of his discharge, the record does not support a finding that Plaintiff's choice was "freely made." *See id.*

Importantly, when applying the arbitrary and capricious standard, the Court's review is confined to the rationale articulated by the decisionmaker, and thus the Court may not supply reasoning that is absent from the decision under review. *Id.* at 417 ("The reviewing court should not attempt itself to make up for such deficiencies; we may not supply a reasoned basis for the agency's action that

the agency itself has not given." (quotation omitted)). Here, the DAB failed to provide the reasoning necessary to support its conclusion, and the Court may not supply that rationale on the DAB's behalf. *See id.* As a result, the Court finds that the DAB "entirely failed to consider an important aspect of the problem" and likewise failed to "examine the relevant data and articulate a satisfactory explanation for its action with a rational connection between the facts found and the choice made." *Beck*, 2015 WL 1202196, at *11 (quoting *Defs. of Wildlife*, 733 F.3d at 1115); *Wolfe*, 2020 WL 7408602, at *4 (citing *Motor Vehicle Mfrs.*, 463 U.S. at 43). Accordingly, Defendant's Motion is due to be denied, and Plaintiff's Cross-Motion is due to be granted with the matter remanded to the DAB for further proceedings.

## IV. CONCLUSION

As a result of the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Count I of Plaintiff's Amended Complaint (Doc. 19, ¶¶ 18–24) is **DISMISSED WITHOUT PREJUDICE**.

2. Defendant's Motion for Summary Judgment (Doc. 31) is **FOUND AS MOOT** in part and **DENIED IN PART**.

   a. Defendant's request for summary judgment as to Count I is **FOUND AS MOOT**.

   b. Defendant's request for summary judgment as to Count II is **DENIED**.

3. Plaintiff's Cross-Motion for Partial Summary Judgment (Doc. 39) is **GRANTED**. The Disciplinary Appeals Board's finding that it lacks jurisdiction over Plaintiff's appeal is found to be **UNLAWFUL** and is thus **SET ASIDE** pursuant to 38 U.S.C. § 7462(f)(2)(A). Accordingly, this matter is **REMANDED** to the Disciplinary Appeals Board for further proceedings consistent with this Order.

4. The Clerk of Court is **DIRECTED** to close the file.

**DONE AND ORDERED** in Orlando, Florida on July 23, 2026.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties